UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA BROWN, as guardian ad litem of S.B., a minor,<br><br>Plaintiff,<br><br>v.<br><br>NAPA VALLEY SCHOOL DISTRICT ET. AL.,<br><br>Defendants. | Case No. C-11-5673 JCS<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE COMPLAINT WITH LEAVE TO AMEND [Docket No. 4]** |

## I. INTRODUCTION

On November 23, 2001, Defendants[1] removed the present action to federal district court. The action was originally initiated by Plaintiff Diana Brown in Napa Valley Superior Court on September 30, 2011. Defendants have filed a motion to dismiss Plaintiff Diana Brown's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim and on the grounds that the lawsuit is untimely and barred by principles of res judicata. The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). A

---

[1] The named Defendants are: Napa Valley Unified School District ("NVUSD"), NVUSD Board of Education, John P. Glaser individually and in his capacity as NVUSD Superintendent, Linda Hansen, individually and in her capacity as a classroom teacher in the NVUSD, Melissa Strongman, individually and in her capacity as Principal at Bel Aire Elementary School in the NVUSD, Michele Murer, individually and in her capacity as Special Education Coordinator in the NVUSD, Laura Miller, individually and in her capacity as Special Education Director in the NVUSD, Barbara Nemko, individually and in her capacity as Administrator for Napa County Special Education Local Plan Area, Napa County Special Education Local Plan Area and DOES 1-10.

hearing on the Motion was held on the Motion at which counsel for the parties appeared. Following the hearing the parties filed supplemental briefs addressing matters that were not addressed in the original pleadings. For the reasons stated below, the Motion is GRANTED WITH LEAVE TO AMEND.

## II.    REQUEST FOR JUDICIAL NOTICE

Defendants have filed a request for judicial notice of two documents that they assert are matters of public record. *See* Docket No. 4-1 (hereinafter, "RJN"). Defendants ask the Court to take judicial notice of 1) a complaint filed by Plaintiff Sarah Brown and her parents Diana and Chris Brown, on September 13, 2006 in district court, Case No. C-06-5610 MEJ; and 2) Magistrate Judge Maria Elena James' July 10, 2007 Order Granting Defendants' Motions to Dismiss in Case No. C-06-5610 MEJ. Plaintiff Diana Brown has not objected to Defendants' request or challenged the authenticity of any of the attached documents.

The Court takes judicial notice of pleading and order offered in Defendants' request for judicial notice, pursuant to Rule 201 of the Federal Rule of Evidence. The Court may consider the documents of which it takes judicial notice, along with the allegations in Plaintiff's Complaint, on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Evidence. *See Catholic League for Religious and Civil Rights v. City and County of San Francisco*, 464 F. Supp. 2d 938, 941 (N.D. Cal. 2006).

## III.    BACKGROUND[2]

### A.    Factual Background and Procedural History

Plaintiff Diana Brown's daughter, "SB" was born on June 14, 1998 and is afflicted with autism. Complaint ¶¶ 1, 4. Chris Brown and Guardian ad Litem Diana Brown are SB's parents. As a child with autism, SB is eligible for special education and related services in conformity with the Individual with Disabilities Education Act, U.S.C. Title 20, § 1400, *et. seq.*, (hereafter "IDEA").

---

[2]The Court assumes the allegations in the complaint to be true for the purposes of this motion. *See Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996)(on motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court assumes the facts alleged in the complaint are true).

At the time of the incidents alleged in the Complaint, SB attended Bel Aire Elementary School in Napa County, California. Plaintiffs allege that while attending Bel Aire, S.B. was subjected to harsh and cruel treatment by a special education teacher, Defendant Linda Hansen "who often antagonized and provoked S.B.'s reactions and anti-social behaviors" typically associated with autism. Compl. ¶ 4. Plaintiff alleges that Defendants were on actual notice of "and were keenly aware of S.B.'s well documented aversions and behaviors." *Id.* ¶ 6. Among the manifestations of SB's autism are frequent shrieking, yelling, poor communication skills, and poor frustration tolerance. *Id.* ¶ 4. As a result, S.B. requires "a great deal of consistency, predictability and structure across all of her environments . . . and although SB does not understand how her behavior affects others, she is keenly aware and sensitive to hostility and cruelty." *Id.*

Chris and Diana Brown filed a Government Claim[3] in accordance with the California Government Tort Claims Act on May 23, 2005. That claim was denied on March 13, 2006. They then filed suit federal district court on September 13, 2006. There, the Plaintiffs asserted numerous state and federal claims arising in large part out of an incident that occurred on April 28, 2005. Plaintiffs alleged that teacher Linda Hansen, a "morbidly obese" teacher physically restrained their daughter, SB in a five point restraining hold for approximately five minutes. RJN, Exh. 1. SB sustained emotional and physical injuries as a result of the physical force used in the restraint.

On July 10, 2007, the federal claims in the lawsuit were dismissed by Magistrate Judge Maria Elena James for failure to exhaust administrative remedies. *See* RJN, Exh. 2. The state law tort claims were dismissed without prejudice as well.[4]

Thereafter, Plaintiff Diana Brown as guardian ad litem for SB initiated an administrative process, which culminated in a settlement on May 11, 2009. *See* Compl. ¶ 10. In the settlement

---

[3] Neither party has provided the Court with a copy of the Government Claim.

[4] The court stated that the state law claims were dismissed "without prejudice" to filing them in state court. With respect to the federal claims, Judge James did not use the words "without prejudice." Thus, Defendants argue in their motion that the federal claims were clearly dismissed *with* prejudice. Defendants are incorrect. There is no indication in Judge James' Order that any part of the suit was dismissed with prejudice. Judge James dismissed the federal claims for failure to exhaust the IDEA's administrative remedies process and that "if Plaintiffs are still aggrieved after exhaustion of the administrative process, they can bring a civil action at that time." RJN, Exh. 2, Order at 4. Thus, as will be explained in greater detail below, Defendants' arguments requesting sanctions are misguided.

agreement, the parties agreed that their efforts to settle the disputes relating to the provision of special education and related services for SB constituted statutory exhaustion. *Id.*

On September 30, 2011, the Plaintiff Diana Brown as guardian ad litem for SB re-filed her lawsuit, this time in Napa County Superior Court. In her Complaint, Plaintiff asserts six claims arising out of the same incidents as described in the earlier federal court action: 1) assault and battery; 2) negligence; 3) 42 U.S.C. §1983; 4) intentional infliction of emotional distress; 5) violation of § 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 794, *et seq.*; and 6) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* In the Complaint, the Plaintiff describes the administrative process as follows: "On May 11, 2009, the parties entered into a settlement agreement regarding only those issues under the jurisdiction of the Office of Administrative Hearings. In that settlement agreement, the parties stipulated that their efforts to settle their disputes relating to the provision of special education and related services for SB constituted statutory exhaustion." Compl. ¶ 10.

Defendants removed the action to this Court based on federal question jurisdiction on November 23, 2011, and now bring a motion to dismiss the complaint in its entirety.

**B.  The Motion**

Defendants assert that all of Plaintiff's claims fail as a matter of law under Rule 12(b)(6) of the Federal Rules of Civil Procedure for the following reasons:

Res Judicata: Defendants assert that all of the claims are barred under the doctrine of res judicata because the same claims were litigated or could have been litigated in the earlier federal proceeding before Judge James and that the dismissal Order of July 10, 2007 constitutes a "final judgment on the merits" for purposes of res judicata.

Statutes of limitations: Defendants further assert that all claims are time-barred. Specifically, Defendants argue that the applicable statute of limitations for all of the claims in this case is two years. Defendants argue that the statute began to run as of the date of the incident giving rise to the claims in this case, or April 28, 2005. Even if the Court disagrees, and the statute began to run after the conclusion of the administrative process on May 9, 2011, the present suit, filed more than two years after that date is untimely. Defendants further assert that there are no allegations in

1  the Complaint that would support a finding of equitable tolling as to any of these claims and the
2  Plaintiff's "emotional" arguments in the Opposition Brief do not provide a basis for tolling.
3    <u>Failure to State a Claim</u>: Defendants argue that the Complaint fails to state a claim against
4  the Defendants other than Linda Hansen.  Specifically, Defendants argue that the Complaint is void
5  of factual allegations against the remaining individual defendants in the Complaint – Glaser,
6  Strongman, Murer, Miller and Nemko.  Further, Defendants argue that these individual Defendants
7  must be dismissed due to Plaintiff's "failure to identify them in a timely Government Claim."
8  Defendants' Motion at 6.

### C. Plaintiff's Opposition

In her opposition brief, Plaintiff makes the following arguments:

<u>Res Judicata</u>: Plaintiff asserts that res judicata does not bar her claims because Judge James' July 10, 2007 Order dismissing the Complaint without prejudice did not constitute a "final judgment on the merits" in order to establish issue or claim preclusion based upon a prior federal suit.

<u>Equitable tolling</u>: Although Plaintiff does not use the term "equitable tolling" in her Opposition Brief, she contends that there were extenuating circumstances that prevented her from filing the present suit earlier.  Plaintiff argues that she pursued her administrative remedies, which should toll the statute of limitations at least until May 9, 2011, and argues that the statute of limitations period for the claims should be further tolled because she was unable to file suit sooner based upon the fragile, and at times catatonic, mental state of her daughter, the need to "stabilize her condition," and the fact that the family was "forced" to move out of the jurisdiction, to the Fairfield, California area to find a new school for SB.

<u>Failure to State a Claim Against Defendants Other Than Linda Hansen</u>: Plaintiff asserts that the claims are adequately alleged because federal court requires only "notice pleading" and that Defendants are on notice of the actions giving rise to liability against them.  Plaintiff does not address Defendants' arguments with respect to the individual Defendants, *i.e.*, that they were not named in the Government Claim and thus, under the CTCA, the claims against them must be dismissed.

## IV. LEGAL STANDARD

### A. Legal Standard Under Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe(s) them in the lights most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Id*. at 555. However, a complaint does not need detailed factual allegations to survive dismissal. *Id*. Rather, a complaint need only include enough facts to state a claim that is "plausible on its face." *Id*. at 570. That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Id*. at 1557 (noting that this requirement is consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled to relief").

### B. Whether Res Judicata Bars The Present Federal Claims

Res Judicata bars a party from re-litigating matters that were brought, or could have been brought, in a previous action. The Defendants assert that the first district court lawsuit precludes litigation of the claims that Plaintiff brings here. The Court disagrees.

To determine the preclusive effect of the first lawsuit – a federal lawsuit – the Court must look to federal law. *See Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d

1064, 1077 n. 10 (9th Cir.2003) (noting that " '[t]he res judicata effect of federal court judgments is a matter of federal law' "). Under federal law, "[r]es judicata is applicable whenever there is: (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011).

Here, Defendants cannot satisfy all of the requirements for res judicata. In particular, Defendants cannot establish that Judge James' Order constituted a "final judgment on the merits." Indeed, Defendants concede that the first action filed by Plaintiffs Chris and Diana Brown was dismissed as a result of their failure to pursue administrative remedies. Defendants attach to their request for judicial notice Judge James' Order, which clearly states that the Plaintiffs could re-file their claims once they had exhausted administrative remedies. See RJN, Exh. 2 at 4 (". . . if Plaintiffs are still aggrieved after exhaustion of the administrative process, they can bring a civil action at that time.") As a result, there has been no "final judgment on the merits" in this case. Although the conclusion to Judge James' Order was silent as to whether the dismissal of the federal claims was with or without prejudice, a dismissal for failure to exhaust state remedies normally operates as a dismissal *without* prejudice. *See e.g. James v. Kincheloe*, 1991 WL 243309 (E.D. Wash., 1991) (citing cases). The Defendants' reliance on res judicata or claim preclusion here is misplaced, and the Motion to Dismiss the Complaint to the extent it is based upon res judicata is DENIED.

### C. Statute of Limitations & Equitable Tolling

#### 1. Equitable Tolling

In *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir.1993), the Ninth Circuit held that a three-pronged test must be applied in order to invoke the equitable tolling doctrine. *Id.* at 1275–76. The court explained: "A plaintiff's pursuit of a remedy in another forum equitably tolls the limitations period if the plaintiff's actions satisfy these factors: 1) timely notice to the defendants in filing the first claim; 2) lack of prejudice to the defendants in gathering evidence for the second claim; and 3) good faith and reasonable conduct in filing the second claim." *Id*.

#### 2. Application of the Law

The issue in this case is whether Plaintiff's claims – of which they were undisputedly on notice as of April of 2005 – are now time-barred. The Court finds that Plaintiff's claims as

7

currently pled are untimely. The Court will permit Plaintiff one opportunity to attempt to amend her Complaint to allege facts supporting equitable tolling. The Court will address each of the federal claims separately below.

        **a.    Section 504 of the Rehabilitation Act Claim – Statute of Limitations**

Section 504 has no statute of limitations. "[I]n the absence of a federal statute of limitations for claims arising under [a federal act], the controlling statute of limitations is the most appropriate one provided by state law." *Donoghue v. County of Orange*, 848 F.2d 926, 930 (9th Cir. 1987) (citing *Johnson v. Railway Express Agency, Inc*., 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975)). Courts generally apply the forum state personal injury statute of limitations to Section 504 claims. *J.W. ex rel. J.E.W. v. Fresno Unified School Dist*., 570 F.Supp.2d 1212, 1222 (E. D. Cal., 2008) (citing *Daviton v. Columbia/HCA Healthcare Corp*., 241 F.3d 1131, 1135 (9th Cir. 2001). In California, the personal injury statute of limitations is two years. Cal.Code. Civ. P. § 335.1.[5] Therefore, Plaintiff's Section 504 claim is subject to a two-year statute of limitations. "While state law determines the period of limitations, federal law determine when a cause of action accrues." *Cline v. Brusett*, 661 F.2d 108, 110 (9th Cir.1981). "Under federal law a cause of action accrues, and the statute of limitations begins to run, when a plaintiff knows or has reason to know of the injury that is the basis of the action." *Alexopulos v. San Francisco Unified School District*, 817 F.2d 551, 555 (9th Cir. 1987). Plaintiff admits that she was aware of the facts that form the basis of this lawsuit at or around the time SB's teacher caused her physical injuries on April 28, 2005.

However, the Court finds that the statute of limitations on the Section 504 Claim was tolled during the period of time she pursued her administrative remedies. In the absence of a federal rule, "[a]long with the limitations period, the court borrows the state's equitable tolling rules, absent a reason not to do so." *Daviton*, 241 F.3d 1131, 1135. In California, the "long settled rule [is] that whenever exhaustion of administrative remedies is a prerequisite to a civil action the running of the

---

[5] The statute of limitations is the same for Plaintiff's § 1983 claim, two years. "For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir.2004) (citation omitted); *see also Bd. of Regents v. Tomanio*, 446 U.S. 478, 483-84, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). California's statute of limitations for personal injury actions is two years. Cal.Civ.Proc.Code § 335.1.

limitations period is suspended during the administrative proceedings." *Addison v. State*, 21 Cal.3d 313, 318, 146 Cal.Rptr. 224, 578 P.2d 941 (1978) (citing *Dillon v. Board of Pension Commrs.*, 18 Cal.2d 427, 116 P.2d 37 (1941)). "[R]egardless of whether the exhaustion of one remedy is a prerequisite to the pursuit of another, if the defendant is not prejudiced thereby, the running of the limitations is tolled when an injured person has several legal remedies and, reasonably and in good faith, pursued one." *Id*. (quoting *Elkins v. Derby*, 12 Cal.3d 410, 414, 115 Cal.Rptr. 641, 525 P.2d 81 (1974)).

Here, Plaintiff's Section 504 claim should be tolled while the administrative claim was pending.[6] Plaintiff filed her administrative claim and thus Defendants were alerted "of the need to begin investigating the facts that form the basis" of the Section 504 claim. *Collier v. City of Pasadena*, 142 Cal.App.3d 917, 924, 191 Cal.Rptr. 681 (1983). Therefore, Plaintiff's Section 504 two-year statute of limitations is tolled for the period of the administrative process. According to the Supplemental Briefs filed by the parties, the administrative process started with the filing on November 13, 2006, of an administrative "due process" complaint. *See* Pl.'s Supp. Brief at 3 (reciting Plaintiff's "Due Process" Request). The Plaintiff voluntarily withdrew that Due Process request on January 23, 2007. *Id.* This withdrawal occurred three months before the statutory deadline of April 28, 2007. *Id.* (citing Exhibit 2). Because this claim was withdrawn on January 23, 2007, the statute of limitations is tolled only for the approximately two months that this administrative claim was pending.[7] A second administrative complaint was not filed until February 2009. On May 11, 2009, that administrative complaint was settled between the parties with the agreement that it constituted exhaustion. Although the tolling for the administrative complaint is only two months, the Plaintiff also filed her federal lawsuit within that time period, on September 13, 2006, and the suit was not dismissed by Judge James until July 10, 2007. The pendency of this federal lawsuit provides a further basis for tolling.

---

[6]Although Plaintiff has not brought a claim specifically under the IDEA the Ninth Circuit has held that where a disabled student brings claims asserting that a school failed to provide appropriate special education, the student must exhaust IDEA administrative remedies to the same extent as if the suit had been brought under the IDEA. *Robb v. Bethel School Dist.*, 308 F.3d 1047 (9th Cir.2002); *Doe v. Arizona Dept. Of Education*, 111 F.3d 678, 684–685 (9th Cir.1997).

[7]Plaintiff explains in the supplemental brief that "Plaintiff forgot about this filing and did not realize its significance, thus explaining why it has never been addressed prior to this brief." Pl.'s Supp. Brief at 2, n. 1.

9

The question becomes whether any additional tolling is warranted, given that it is undisputed that Plaintiff failed to file the present lawsuit until *more* than two years after May 11, 2009 - the date on which the administrative process was complete. Plaintiff filed the instant lawsuit on September 23, 2011. Plaintiff argues in her Opposition Brief that:

> SB was forced to wait a period of time prior to filing the instant action. First, due to the severity of her injuries and damages, SB and her family were forced to move away from the jurisdictional boundaries of the Napa Valley Unified School District. The move was effectuated in great part to assist SB to feel safe and comfortable in school. SB was traumatized by the events alleged in the instant Complaint. The severity of her trauma could not be ascertained until SB was willing to communicate her fear and avoidance of school and related activities. For years since the incident, SB was either in a catatonic or inconsolable state of mind which barred her parents and guardians from bringing this action prior to the instant filing which begs for this Court's adjudication on the merits.

Pl.'s Opp. at 9.

Other than the above arguments in her Opposition Brief, Plaintiff has alleged no facts that would support a finding of any additional equitable tolling beyond that which is appropriate for the duration of the administrative exhaustion. Moreover, the facts, as currently argued by the Plaintiff in her brief, would not justify the application of the doctrine of equitable tolling. SB's injuries did not prevent the filing of the first action, nor did they prevent the Plaintiff from pursuing her administrative remedies. This is not a case where, for example, the Plaintiff's own mental incapacity or illness prevented the timely filing of a claim. Here, for many years following the traumatic events alleged in the Complaint, SB's parents pursued legal remedies in various courts. Nor does Plaintiff articulate how the family's move to the Fairfield area provides legal justification for equitable tolling. Plaintiff cites no authority for the proposition that moving to a different city within the same state or the ongoing nature of SB's injuries tolls the statute of limitations for her federal claims. Because the circumstances described in Plaintiff's Opposition Brief, even if alleged in the Complaint, would not provide a basis for equitable tolling, the Court finds it to be a close question whether Plaintiff should be permitted leave to amend her Complaint to allege equitable tolling.

The Court notes that even if equitable tolling were to apply, as currently pled, the Plaintiff may not be able to satisfy California's equitable tolling requirements. In *Addison v. California*, 21 Cal.3d 313 (1978), the California Supreme Court set forth three requirements for equitable tolling: (1) the plaintiff gave timely notice to the defendant of the plaintiff's claim, (2) the resultant delay did

1 not cause prejudice to the defendant's position, and (3) the plaintiff acted reasonably and in good
2 faith. *Addison*, 21 Cal.3d at 319.

3 The incident giving rise to the claims in this case occurred almost seven years ago. Plaintiff
4 will have to demonstrate that their delay has not prejudiced the Defendants and demonstrate that her
5 delay was reasonable and in good faith. Plaintiff will be given one opportunity to amend her
6 Complaint in order to plead tolling of the statute of limitations with respect to the § 504 claim and
7 her § 1983 claim.[8]

### b. The ADA Claim

Like the Rehabilitation Act, the ADA does not contain its own limitations period. *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1137 n. 2 (9th Cir.2002). Where federal statutes do not contain their own limitations periods, federal courts apply the most appropriate or analogous state statute of limitations. *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); *see also Pickern*, 293 F.3d at 1137 n. 2. In so doing, courts must determine whether the application of that limitations period is consistent with the federal statute and its underlying policies. *Wilson v. Garcia*, 471 U.S. 261, 266-68, 105 S.Ct. 1938, 1941-43, 85 L.Ed.2d 254 (1985).

Several federal district courts in California have found that California's two-year statute of limitations for personal injury actions applies to federal disability claims brought in California. *Pickern*, 293 F.3d at 1137 n. 2. Some district courts, however, have found the ADA to be more

---

[8] Plaintiff suggests in her Supplemental Brief that her claims are timely filed because "SB's harm falls squarely within the analysis of the continuing violations doctrine." Pl.'s Supp. Br. at 8. Plaintiff provides no facts or argument in support of this contention. The Court therefore cannot assess this assertion at this stage of the proceedings. In her amended complaint, Plaintiff may allege facts to support her contention that the continuing violations doctrine applies here. The continuing violations doctrine provides that "a plaintiff who shows that a [systematic and discriminatory] policy and practice operated at least in part within the limitation period satisfies the filing requirements ... even if some or all of the events evidencing its inception occurred prior to the limitations period." *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1480 (9th Cir.1989). There are two ways that a plaintiff can establish continuing violations. *Douglas v. California Dept. of Youth Authority*, 271 F.3d 812, 822 (9th Cir. 2001), citing *Gutowsky v. County of Placer*, 108 F.3d 256, 259 (9th Cir. 1997). "First, the plaintiff may show a serial violation by pointing to a series of related acts against one individual, of which at least one falls within the relevant period of limitations ... Second, a plaintiff may show a systematic policy or practice of discrimination that operated, in part, within the limitations period–a systemic violation." *Id*. (internal citations omitted).

analogous to California's Unruh Civil Rights Act than to a personal injury action. *See e.g., K.S. v. Fremont Unified Sch. Dist.*, 2007 WL 915399 at *3 (N.D. Cal., Mar.23, 2007) (Illston, J.); *Kramer v. Regents of Univ. of Calif.*, 81 F.Supp.2d 972, 973 (N.D. Cal., June 1, 1999) (Illston, J.); *see also Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1029-32 (9th Cir. 2003) (discussing similarities between the Unruh Act and the ADA). One district court has found neither to be applicable, instead looking to California's Disabled Persons Act as the most analogous state statute. *See Kemp v. Regents of the University of California*, 2010 WL 2889224 (N.D. Cal., July 22, 2010) (Hamilton, J.).

Title II of the ADA prohibits any "public entity" from discriminating against any "qualified individual with a disability," by denying such individual "the benefits of the services, programs, or activities" of the public entity. 42 U.S.C. § 12132. The term "public entity" means, among other things, "any State or local government." 42 U.S.C. § 12131.

The Court is persuaded by Judge Hamilton's reasoning in *Kemp v. Regents of the University of California*, in which the court found that the state law statutory equivalent of Title II of the ADA is California Civil Code § 54.1, the Disabled Persons Act. 2010 WL 2889224 (N.D. Cal., July 22, 2010). The Unruh Civil Rights Act is not as analogous because it prohibits denial of equal accommodations by "business establishments." *Kemp*, at *6 (citing Cal. Civ.Code § 51(b)). Title III of the ADA prohibits discrimination in public accommodations, 42 U.S.C. § 12182, but defines "public accommodation" as including "a museum, library, gallery, or other place of public display or collection," if the operation of such entity "affect[s] commerce." *Id.* (citing 42 U.S.C. § 12181(7)(H)).

However, this conclusion does not end the inquiry. Like the ADA, neither the Unruh Act nor the Disabled Persons Act includes a statute of limitations; thus, the Court must still determine which statute of limitations applied. The Ninth Circuit has not yet decided which limitation period applies to Unruh Act claims. *See Olympic Club v. Those Interested Underwriters at Lloyd's London*, 991 F.2d 497, 501 n. 11 (9th Cir.1993) (stating in dicta that the three-year statute of limitations for state statutory claims (Civil Code § 338) would apply to Unruh Act claims); *see also Pickern*, 293 F.3d at 1137 n. 2 (assuming, without deciding, that personal injury statute of limitations would apply).

Moreover, as the district court explained in *Kemp*, there is no controlling Supreme Court authority on point. Judge Hamilton cited *Gatto v. County of Sonoma*, 98 Ca. App. 4th 744, 120

Cal.Rptr. 2d 550 (2002), a decision of the California Court of Appeals that contains a lengthy analysis of the limitations period under Unruh Civil Rights Act and analyzed the question in terms of whether the right sought to be protected is one that has evolved from the common law or whether the right is one that did not exist at common law. The court in *Gatto* found that while Title III ADA claims (nondiscrimination by places of public accommodation) can be analogized to the Unruh Act as having been derived from common law and would thus be subject to the personal injury statute of limitations, Title II claims (nondiscrimination in the provision of services by public entities) do not derive from common law. In the particular case before it, the *Gatto* court found that both types of claims were derived from common law and thus subject to California's personal injury statute of limitations. The court held that the personal injury statute of limitations should apply to causes of action that have evolved from the common law, but that a three-year statute of limitations period (from Civil Code § 338) should apply to the others. *Kemp*, 2010 WL 2889224 at * 6. Applying the analysis of *Gatto*, and in the absence of any definitive ruling from the Ninth Circuit or the California Supreme Court, Judge Hamilton concluded that California's three-year statute of limitations should apply to the plaintiff's claim under Title II of the ADA. *Id.* at *7.

Here, as found by Judge Hamilton in *Kemp* the right sought to be protected is one that can be characterized as having evolved from common law – the right to be free from disability discrimination in the provision of public services, here, public education. The Court is, accordingly, persuaded that a three-year statute of limitations applies to the Plaintiff's ADA claim in the present case.[9]

This Court's conclusion is further supported by Judge Illston's analysis in *Kramer v. Regents of Univ. of Cali*fornia. In *Kramer*, Judge Illston found that the a three-year statute of limitations period applied. After conducting a lengthy review of the case law in this area, and noting that the Ninth Circuit has not specifically addressed the issue, the court concluded that "[b]ecause the Unruh Act and California Disabled Persons Act both essentially incorporate the ADA in its entirety. . . those laws are directly analogous to federal disability discrimination laws." *Id.* at 976. The court noted that most of the district courts in this district to consider this issue as of 1999 had adopted the

---

[9]The Court is not persuaded by the Defendants' arguments in the Supplemental Brief, that this case is best analogized as a personal injury action, and that a two-year statute of limitations applies.

1 personal injury statute of limitations period "with little or no discussion, by analogizing ADA or
2 Rehab Act claims to § 1983 claims. None considered whether the statute of limitations applicable to
3 the Unruh Act should apply. . ." *Kramer*, 81 F.Supp.2d at 976. Finding a fourth circuit case
4 persuasive, *Wolsky v. Medical College of Hampton Roads*, 1 F.3d 222, 224 (4th Cir. 1993), Judge
5 Illston concluded that the state disability statute of limitations period applied. "Simply concluding
6 that the ADA is a civil right, and that therefore the statute of limitations applicable to §1983 should
7 apply, seems insufficient." *Kramer*, 81 F.Supp.2d at 976. The court held that "the ADA and the
8 Unruh Act are not just closely analogous, they are virtually identical." *Id.* at 977. The court was
9 still faced with the task of determining which statute of limitations applies, given that the Unruh Act
10 contains none. The court held that a three-year period applied.

11 The Court is persuaded by the reasoning of the courts in *Kramer*, and *Kemp* and concludes
12 that a three-year period applies to Plaintiff's ADA claim. The next question is whether the Plaintiff
13 filed her federal ADA claim in a timely manner. Plaintiff does not dispute that her claim accrued on
14 April 28, 2005 – the date of the incident involving Defendant Hansen that gave rise to the claims in
15 this matter. Plaintiff filed her first federal lawsuit almost seventeen months later, on September 13,
16 2006. The Court has explained above that the statute of limitations stopped running at that time and
17 was tolled while that suit was pending, ending with the conclusion of the administrative process on
18 May 11, 2009. The second lawsuit was filed on September 23, 2011, over two and a half years later.
19 Thus, even under the longer statute of limitations period of three years, Plaintiff's ADA claim is
20 time-barred.

21 However, as with the §1983 and Rehabilitation Act claim, the Plaintiff will have one
22 opportunity to amend her Complaint to allege facts that could support the applicability of the
23 equitable tolling doctrine.

### d.     *Statutes of Limitations for State Tort Claims*

25 The statute of limitations for assault, battery and negligence in California is two years. *See*
26 Cal. Civ. Proc. The Ninth Circuit has explained that an IIED claim is classified as a personal injury
27 claim. *See Molski v. Gleich*, 318 F.3d 937, 958 (9th Cir.2003). Under California law, personal
28 injury claims are subject to a two-year limitations period. *See* Cal. Civ. Proc. Code 335.1. A cause
of action for intentional infliction of emotional distress ("IIED") accrues and the statute of

limitations begins to run once plaintiff suffers severe emotional distress as a result of outrageous conduct on part of defendant. *See* West's Ann. Cal. Civ. Proc. Code § 340(3); *Cantu v. Resolution Trust Corp.*, 4 Cal.App.4th 857, 889, 6 Cal.Rptr.2d 151 (1992). Code § 335.1. The first, second and fourth claims are, therefore, clearly time-barred. Plaintiff will be given an opportunity to attempt to amend the Complaint to cure this defect, *e.g.*, by alleging facts that could support equitable tolling.

**D.  Sufficiency of the Complaint**

**1.  The Rehabilitation Act & ADA Claims**

Plaintiff's fifth and sixth claims allege that NVUSD's and the Board of Education's acts and omissions violated the Americans with Disabilities Act[10] and Section 504 of the Rehabilitation Act[11]

In order to state a claim under Title II of the ADA and the Rehabilitation Act, a plaintiff must allege that: (1) she is an individual with a disability under the Act; (2) she is "otherwise qualified" to participate in or receive the benefit of the entity's services, programs, or activities, *i.e.*, she meets the essential eligibility requirements of the entity, with or without reasonable accommodation; (3) she was either excluded from participation in or denied the benefits of the entity's services, programs, or activities, or was otherwise discriminated against by the public entity solely by reason of her disability; and (4) the entity is a public entity (for the ADA claim) or receives federal financial assistance (for the Rehabilitation Act claim).[12] *Zukle v. Regents of University of California*, 166 F.3d 1041, 1045 (9th Cir. 1999). "The ADA shall be construed broadly in order to effectively implement the ADA's fundamental purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *D.K. ex rel.*

---

[10] Section 202 of the Americans with Disabilities Act provides that: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

[11] Section 504 of the Rehabilitation Act of 1973 provides that: "No otherwise qualified individual in the United States ... shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a).

[12] The Ninth Circuit has explained that: "There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act. *See* 42 U.S.C. § 12133 ('The remedies, procedures, and rights set forth in [the Rehabilitation Act] shall be the remedies, procedures, and rights [applicable to ADA claims].') ..." *Zukle v. Regents of University of California*, 166 F.3d 1041, 1045 (9th Cir. 1999).

*G.M. v. Solano County Office of Educ.*, 667 F.Supp.2d 1184, 1190 (E.D. Cal., 2009) (citing *Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir. 2002)).

In the present case, the Court finds that the allegations set forth in the Complaint, while time-barred in their current form, adequately place the Defendants NVUSD and Board on notice of the ADA and Rehabilitation Act claims against them.

### 2. Section 1983 Due Process Claim

The Ninth Circuit has reiterated that claims not involving an arrest or custodial situation and claims by students asserting the right to be free of violations of bodily integrity remain within the purview of the Fourteenth Amendment. *Fontana v. Haskin*, 262 F.3d 871, 882 (9th Cir. 2001). The threshold question in a substantive due process analysis is "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock contemporary conscience." *Id.* at 882 n. 7 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)).

Here, the conduct alleged against Defendant Hansen, accepted as true on a Motion to Dismiss, while time-barred in its current form, certainly rises to the level of conduct that "shocks the conscience." This claim, however, fails to state a claim against any of the other Defendants.

There is an additional problem with Plaintiff's § 1983 claim to the extent that it is alleged against the Defendants in their individual capacities. Although not raised in their Motion, the Court notes that the ADA cannot be a predicate for Plaintiff's § 1983 claim based on the Ninth Circuit's decision in *Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002). There, the Ninth Circuit, agreeing with several other circuits, held that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act." The court reasoned that: "A comprehensive remedial scheme for the enforcement of a statutory right creates a presumption that Congress intended to foreclose resort to more general remedial schemes to vindicate that right." *Id.* at 1155 (internal citation omitted). The court found that the remedial scheme of Title II was so comprehensive as to bar Section 1983 enforcement. The court held, therefore, that plaintiffs could not bring a Section 1983 claim based on the two disability statutes against state officials. *Id.*

One district court has taken this analysis a step further, finding that it is likely that a § 1983 claim based upon the ADA or Rehabilitation Act is barred as to defendants acting in their official capacities as well. *See Cherry v. City College of San Francisco*, 2006 WL 6602454, *11 (N.D. Cal., Jan 12, 2006) (Alsup, J.). Judge Alsup noted that "A lingering question from *Vinson*, therefore, is whether the bar on Section 1983 claims also applies to suits against officers in their official capacities." *Id.* at *12. Judge Alsup held that "the official/individual capacity distinction does not alter the preclusive effect of Title II and Section 504" because, as he explained, "[t]he primary rationale for disallowing the Section 1983 claim in *Vinson* was the comprehensiveness of the ADA and the Rehabilitation Act – they comprise the conclusive statement of Congress on remedies in this area of civil-rights law. The rationale cuts broadly and will be applied here. Moreover, permitting such suits would yield duplicative enforcement." *Id.* at *11 (citing *Lollar v. Baker*, 196 F.3d 603, 610 (5th Cir.1999) ("To permit a plaintiff to sue both under the substantive statutes that set forth detailed administrative avenue of redress as well as section 1983 would be duplicative at best; in effect such a holding would provide the plaintiff with two bites at precisely the same apple").

Because the parties have not briefed these later issues, the Court will address them later, either in connection with a 12(b) motion or a summary judgment motion. Therefore, in addition to dismissing all claims against all Defendants as untimely (with leave to amend to plead tolling in an amended complaint), Plaintiff's § 1983 claim, to the extent it is alleged against Defendants other than Hansen, is DISMISSED WITH LEAVE TO AMEND. In amending her Complaint, Plaintiff shall be mindful of the authorities discussed above with respect to whether § 1983 claims premised upon the ADA or the Rehabilitation Act may be asserted against the Defendants in this case.

### 3. State Tort Claims – Negligence (Claim 2) and Intentional Infliction of Emotional Distress (Claim 4)[13]

#### a. *Negligence*

Defendants argue that all of the claims fail to state a claim against the individual Defendants other than Defendant Hansen. The Court disagrees with respect to the negligence claim. In order to

---

[13] Claim 1 for assault and battery against Defendant Hansen presumably is not subject to the Defendant's Motion to Dismiss for failure to state a claim.

17

1    state a claim for negligence under California law, a plaintiff must allege: 1) a duty of care; 2) breach
2    of that duty; 3) injury resulting from that breach; and 4) compensable damages. *See, e.g., Huggins v.*
3    *Longs Drug Stores California, Inc.*, 6 Cal.4th 124, 129, 24 Cal.Rptr.2d 587, 862 P.2d 148 (1993).
4    To be found liable in tort, defendants must have owed a duty of care to plaintiffs. "A tort, whether
5    intentional or negligent, involves a legal duty, whether by statute, contract, or otherwise. Without a
6    duty, 'any injury is *damnum absque injuria* – an injury without a wrong.'" *McGettigan v. Bay Area*
7    *Rapid Transit Dist.*, 57 Cal.App.4th 1011, 1016, 67 Cal.Rptr.2d 516 (1997) (quoting 5 Witkin,
8    Summary of California Law, Torts § 6 at 61 (9th ed.1988).)

9    Here, Plaintiff has placed Defendants on notice of the basic facts supporting her negligence
10   claim. There is a specific allegation against Defendant Melissa Strongman, the Principal of Bel Aire
11   Elementary School, that she was deliberately indifferent to the Plaintiff's prior warnings and
12   complaints regarding the ongoing abuse and harm to SB. Compl., ¶16. Further, there are allegations
13   in the Complaint that Defendants Murer and Miller directly supervised Hansen during the period of
14   time when the abuse of SB was taking place and that these Defendants had knowledge of the child
15   abuse that was occurring at the hands of Defendant Hansen. *Id.*, ¶¶ 14, 15.

16   With respect to the remaining Defendants (NVUSD, NVUSD Board and Glaser), Plaintiff
17   alleges Defendants' conduct in this case fell below the standard of care by failing to maintain a safe
18   environment for SB, failing to maintain proper procedures regarding special needs children with
19   behavioral difficulties, by maintaining a dangerous condition, *i.e.*, Hansen, "who was openly hostile
20   and abusive to SB and expressed her disdain about having special needs children in her classroom"
21   among other allegations. Plaintiff has also pled causation and injury.

22   If Defendants are arguing that the individual Defendants cannot be held vicariously liable for
23   the actions of Defendant Hansen, the Court finds this argument to be premature. At this stage of the
24   proceedings, the Court finds that the allegations are sufficient to place Defendants on notice of the
25   claims against them.[14]

26   The Court finds, however, that there are no allegations in the Complaint to support a

---

[14] The Court does not address whether each Defendant has a duty to Plaintiff sufficient to give rise to a negligence claim. Defendants do not address this issue in their Motion. That issue may be addressed in a further 12(b) motion or on summary judgment.

18

negligence claim against Defendant Nemko. The negligence claim against Defendant Nemko is dismissed WITH LEAVE TO AMEND.

### b. IIED

With respect to the Intentional Infliction of Emotional Distress Claim, the Court finds that the Complaint as currently pled fails to state a claim as to any Defendant other than Hansen. Under California law, the elements of a tort claim for intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Christensen v. Superior Court*, 54 Cal.3d 868, 903, 2 Cal.Rptr.2d 79, 820 P.2d 181 (1991). "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized society." *Id*.

As currently pled, there are no facts that could support liability for IIED with respect to any of the Defendants other than Hansen. Thus, the IIED claim against all Defendants other than Hansen must be dismissed for failure to state a claim.

Although it appears that amendment of this claim would be futile, the Court will provide Plaintiff one opportunity to amend this claim in the event that there are facts supporting liability for IIED against any of the Defendants. Accordingly, in addition to dismissing all claims on timeliness grounds (with leave to plead tolling), the IIED claim is DISMISSED WITH LEAVE TO AMEND.

## IV. CONCLUSION

Accordingly, Plaintiff's claims are DISMISSED WITH LEAVE TO AMEND as to all parties.[15] Plaintiff shall file an Amended Complaint consistent with this Order within thirty (30) days.

---

[15] The Court rejects Defendants' timeliness arguments based on the California Tort Claims Act ("CTCA"). Defendants argue that joined causes of action in federal court based upon state tort claims are subject to dismissal unless the claims filing requirements of the CTCA have been met. Defendant argues that the CTCA required Plaintiff to submit her claims six months following the March 13, 2006 rejection of her government claim and that her federal claims were not filed until September 26, 2011. Defendants ignore the fact that Plaintiff's first federal lawsuit satisfied this requirement, as it was filed on September 13, 2006. Defendants provide no authority for the proposition that the first federal litigation, filed within six months of the denial of the Government Claim, failed to satisfy this requirement under the CTCA.

The Defendants' request for sanctions is DENIED.

IT IS SO ORDERED.

Dated: May 18, 2012

_____
JOSEPH C. SPERO
United States Magistrate Judge