UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Diana Brown, et al.,<br><br>            Plaintiffs,<br><br>      v.<br><br>Napa Valley Unified School District, et al.,<br><br>            Defendants. | Case No.: 3:11-cv-05673-JCS<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT [Docket Nos. 25-26]** |

## I.   INTRODUCTION

Before the Court are two Motions to Dismiss Plaintiffs' First Amended Complaint ("FAC").  Plaintiffs Chris and Diana Brown, the parents of "S.B.", assert various claims against Defendants[1] for an incident on April 28, 2005, in which a school teacher allegedly sat upon and otherwise taunted S.B.  On May 18, 2012, this Court found that all claims were time-barred by the applicable statutes of limitations.  Accordingly, the Court dismissed Plaintiffs' prior complaint with leave to amend to give Plaintiffs the opportunity to allege facts sufficient to invoke the equitable tolling or continuing violations doctrines.  Plaintiffs filed their First Amended Complaint on June 11, 2012, and on July 2, 2012, Defendants filed the Motions to Dismiss.  The First Amended Complaint does not include any additional facts that would allow this Court to

---

[1] The Defendants in this action are the Napa Valley Unified School District ("NVUSD"); the NVUSD Board of Education; John P. Glaser, the NVUSD Superintendent; Linda Hansen, a NVUSD classroom teacher; Melissa Strongman, the Principal of Bell Aire Elementary School; Michele Murer, the NVUSD Special Education Coordinator; Laura Miller, the NVUSD Special Education Director; Barbara Nemko, the Administrator for Napa County Special Education Local Plan Area, Napa County Special Education Local Plan Area; and DOES 1-10.  Defendant Linda Hansen filed a separate Motion to Dismiss.

further toll Plaintiffs' untimely claims. Therefore, Defendants' Motions to Dismiss Plaintiffs' First Amended Complaint is hereby GRANTED.[2]

## II. BACKGROUND

### A. Factual Allegations and Procedural History[3]

Plaintiffs' daughter, "S.B.", was born on June 14, 1998 and is afflicted with autism. FAC ¶¶ 1, 4. At the time of the incidents alleged in the First Amended Complaint, S.B. was a first grader at Bel Aire Elementary School in the Napa Valley Unified School District ("NVUSD"). *Id*. ¶¶ 4, 34. Plaintiffs allege that while attending Bel Aire, S.B. was subjected to harsh and cruel treatment by a special education teacher, Defendant Linda Hansen, "who often antagonized and provoked S.B.'s reactions and anti-social behaviors" typically associated with autism. *Id*. In particular, Plaintiffs allege that Defendant Hansen taunted "S.B. by playing one song over and over again, knowing that S.B. was particularly sensitive and reactive to that song." *Id*. ¶ 34. Then, on April 28, 2005, Hansen without reason or provocation repeatedly physically restrained S.B. *Id.* According to Plaintiffs, Hansen is "morbidly obese" and laid her full body weight of more than three-hundred pounds directly upon S.B. several times. *Id.* S.B. sustained emotional and physical injuries as a result of the physical force used in the restraint.

On May 23, 2005, Plaintiffs filed a Government Claim regarding the April 28th incident in accordance with the California Government Tort Claims Act. That claim was denied on March 13, 2006. Plaintiffs then filed suit in federal district court on September 13, 2006. *Id.* ¶ 23. There, Plaintiffs asserted numerous state and federal claims arising in large part out of the April 28th incident. On July 10, 2007, Magistrate Judge Maria Elena James dismissed all Plaintiffs'

---

[2] The parties have consented to the disposition of this case before a Magistrate Judge pursuant to 28 U.S.C. § 636(c).

[3] The relevant facts in the Court's May 18, 2012 order shall be incorporated herein. *See Brown v. Napa Valley Sch. Dist.*, No. 11-5673, 2012 WL 1831539 (N.D. Cal. May 18, 2012).

claims for failure to exhaust administrative remedies. *See Brown v. Napa Valley Unified Sch. Dist.*, No. 06-5610, 2007 WL 2028201 (N.D. Cal. July 10, 2007).

Plaintiffs did not resume their administrative remedies immediately. Plaintiffs explain that after the April 28th incident, S.B. would enter into periods of "inconsolable fear and terror characterized by hysteria, shrieking, spitting, head banging, screaming, hitting, flailing and refusal to move[,]" as well as "long periods of absolute catatonia." FAC ¶ 30. S.B. refused to attend school, and as a result, the NVUSD initiated SARB proceedings against S.B. and her parents.[4] *Id.* ¶ 31. As a result of the SARB proceedings, S.B.'s mother was forced to become S.B.'s home school teacher as well as her primary care provider. *Id.* According to Plaintiffs, after they began home school instruction, NVUSD continued to invade their privacy by making unannounced visits "under the guise of checking on the curriculum and benefits of home schooling." *Id.* ¶ 31.

Around August 2008, S.B. and her family moved out of the jurisdictional boundaries so S.B. could obtain appropriate educational programs and services. FAC ¶ 31; Pl. Opp. at 3. S.B. did not stabilize for some time, however, and remained within the full-time care of her mother until she was finally willing and able to try attending another school. FAC ¶ 32. According to Plaintiffs, until S.B.'s health and welfare stabilized, "it was virtually impossible to adequately allege a complete reiteration of the facts which comprise the allegations." *Id.*

On February 6, 2009, Plaintiffs submitted a Request for Due Process on February 6, 2009, thereby initiating the administrative remedies Judge James had contemplated in her July 2007 order. On May 11, 2009, the parties settled their dispute by agreeing that their efforts constituted

---

[4] Plaintiffs describe Student Attendance Review Board (SARB) Proceedings as criminal proceedings brought against parents whose children are truant. According to Plaintiffs, "SARB proceedings are often commenced by school districts as a 'first strike' method with the intention of putting parents on the defensive rather than giving them the first opportunity to file due process proceedings which seek to question and invalidate the student's programming and services." FAC ¶ 29 n.1.

statutory exhaustion. *See* FAC ¶ 10. On September 30, 2011, over two years after successfully exhausting their administrative remedies, Plaintiffs re-filed their lawsuit in Napa County Superior Court. Plaintiffs explain that the time between exhaustion of the administrative remedies and the filing of the instant complaint became overwhelming and debilitating for both S.B. and her mother, who became "ill and fatigued." *Id*. ¶ 30. On November 23, 2011, Defendants removed the action to this Court and moved to dismiss the complaint in its entirety.

### B.     The May 18, 2012 Order

This Court granted Defendants' Motion to Dismiss on May 18, 2012. *See Brown v. Napa Valley Sch. Dist.*, No. 11-5673, 2012 WL 1831539 (N.D. Cal. May 18, 2012) ("*Brown*"). The Court held that all Plaintiffs' claims were time-barred by the applicable statute of limitations and thereby dismissed Plaintiffs' claims with leave to amend.[5] Specifically, the Court held that a two-year statute of limitations applied to the Section 504 Rehabilitation Act Claim, the §1983 claim, as well as the state tort claims including assault, battery, intentional infliction of emotional distress and negligence. *Id*. at *5, *5 n.5, *10. The Court also held that a three-year statute of limitations applied to Plaintiffs' ADA claims. *Id*. at *9.

The Court also addressed the doctrine of equitable tolling, and found that Plaintiffs' claims should be tolled while Plaintiffs were in pursuit of their administrative remedies as well as when the federal lawsuit was pending. *See id*. at *5-8; *see also Addison v. State of California*, 21 Cal.3d 313 (1978) ("courts have adhered to a general policy which favors relieving plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonable and in good faith, pursues one designed to lessen the extent of his injuries or damage."). The Court found, however, that even when tolling the applicable statutes of limitations for the period in which

---

[5] The Court's previous order explains how the Court decided the applicable statute of limitations for each claim. *Brown*, 2012 WL 1831539, at *5-10.

4

Plaintiffs pursued other legal remedies, Plaintiffs' claims were still time-barred.[6] *Brown*, 2012 WL 1831539, at *6. The Court granted Plaintiffs the opportunity to amend the complaint to allege facts sufficient to invoke further equitable tolling or application of the continuing violations doctrine. *Id*.

### C. Plaintiffs' First Amended Complaint

In the First Amended Complaint, Plaintiffs assert the same six claims as the previous complaint before this Court and the federal court action before Judge James: 1) assault and battery; 2) negligence; 3) 42 U.S.C. §1983; 4) intentional infliction of emotional distress; 5) violation of § 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 794, *et seq*.; and 6) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq*. Aside from alleging a few additional facts which purportedly invoke the equitable tolling and continuing violations doctrines, Plaintiffs have not changed the substance of the claims from the prior complaint.

The additional facts in Plaintiffs' First Amended Complaint are found within paragraphs 27 - 33. The following facts allegedly justify this Court's application of the equitable tolling doctrine:

> After the April 28th incident, "S.B. waxed and waned between period of inconsolable fear and terror characterized by hysteria, shrieking, spitting, head

---

[6] There was a period of 2346 days (6 years, 5 months and 2 days) between the time of the incident (4/28/05) and the filing of the complaint in Napa Superior Court (9/30/11). The Court tolled the claims for the period of each administrative process, which includes 294 days for the time in which Plaintiffs prosecuted their Government Claim (5/23/05 - 3/13/06), and 94 days for the time in which the Parties settled with the agreement that they satisfied all statutory exhaustion (2/6/09 - 5/11/09). The Court also tolled the claims for the 300 days the federal suit was pending before Judge James (9/13/06 - 7/10/07). Altogether, the claims have been tolled for 294 + 94 + 300 = 688 days while Plaintiffs pursued other legal remedies. The applicable statutes of limitations are two years (730 days) and three years (1095 days). Thus, even if applying the three-year statute of limitations (1095 days) and tolling for the period in which Plaintiffs pursued other legal remedies (688 days), Plaintiffs' claims are still untimely (2346 – 688 = 1658 > 1095).

5

banging, screaming, hitting, flailing and refusal to move" as well as "long periods of absolute catatonia", FAC ¶ 30;

S.B.'s mother is S.B.'s sole care provider and "the only one to whom S.B. would respond," FAC ¶¶29-30;

"The period of time between exhaustion of the administrative remedies and the filing of this complaint became overwhelming and debilitating for both S.B. and her mother who became ill and fatigued yet," FAC ¶ 30;

Plaintiffs were required to defend respond to SARB proceedings advanced by NVUSD based on the fact S.B. could not attend school, FAC ¶¶ 29, 31;

As a result of the SARB proceedings, S.B.'s mother took on the "additional burden" to become S.B.'s teacher in all subject areas while "NVUSD offered no assistance," FAC ¶ 31;

Once the home school program began, "NVUSD continued its relentless invasion into the privacy of S.B.'s home by making unannounced visits under the guise of checking on the curriculum and benefits of home schooling," FAC ¶ 31;

The aforementioned circumstances forced S.B. and her family to move out of the jurisdictional boundaries of NVUSD, FAC ¶ 31;

After the move, "there were tremendous financial and logistic [sic] burdens placed on the family," FAC ¶ 32;

"S.B. did not stabilize for some time" and until S.B.'s health and welfare stabilized, "it was virtually impossible to adequately allege a complete reiteration of the facts which comprise the allegations." FAC ¶ 32.

Next, in Paragraph 33, Plaintiffs allegedly state facts which justify the Court's application of the continuing violations doctrine. Plaintiffs allege that Defendants advanced "systematic policies and procedures . . . during the limitations period which had a discriminatory effect upon S.B.," which include but are not limited to:

> (a) Permitting a teacher to remain in S.B.'s classroom that was openly adverse to working with special education students like S.B.;
>
> (b) Failing to take heed of complaints and concerns voiced by S.B.'s instructional assistant who was clear that S.B.'s teacher was unstable and posed a danger to S.B. and other students in her classroom;

6

     (c) Failing to document and report the restraints suffered by S.B. as required by law;

     (d) Commencing SARB proceedings against S.B. and her family as a first strike attack thus delaying S.B.'s exhaustion of administrative remedies by several months;

     (e) Engaging in invasive and extraordinary tactics and means designed to intimidate and harass S.B. and her family.

FAC ¶ 33.

### D.  Defendants' Motions to Dismiss

Defendants argue that all claims are time-barred and Plaintiffs have not alleged facts sufficient to invoke the equitable tolling or continuing violations doctrines. Defendants argue Plaintiffs have not shown they exercised the good faith and reasonable conduct necessary for equitable tolling. Defendants contend the application of the continuing violations doctrine on the grounds that the April 28th incident was a discrete event that cannot be grounds for a continuing violation. Because Plaintiffs did not change the substance of the claims in response to this Court's previous order, Defendants also challenge the sufficiency of the allegations in Plaintiffs' First Amended Complaint. Finally, the District Defendants ask the Court for attorneys' fees and costs pursuant to California Code of Civil Procedure § 1038.

## III.  LEGAL STANDARD -- 12(b)(6) MOTION TO DISMISS

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Com'n*, 720 F.2d 578, 581 (9th Cir. 1983). "The issue is not whether a plaintiff will ultimately prevail but whether [the plaintiff] is entitled to *offer* evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) (emphasis added). The plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its

United States District Court
Northern District of California

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  "In federal court, dismissal for failure to state a claim is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993) (internal citations omitted).  "When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980).

## IV. ANALYSIS

### A. Statute of Limitations

As held in this Court's previous order, Plaintiffs' claims are time-barred by the applicable statute of limitations as to each of Plaintiffs' claims.  *See Brown*, 2012 WL 1831539, at *5-10.  Further, the time to file a lawsuit was tolled for the time during which Plaintiffs pursued administrative remedies, and during the pendency of the first federal complaint before Judge James.  *See id*. at *5-8.  Therefore, the sole question now before the Court regarding the statutes of limitations is whether Plaintiffs have alleged, in the First Amended Complaint, any additional facts to warrant additional equitable tolling or to invoke the continuing violations doctrine.

### B. Equitable Tolling

Equitable tolling is a judge-made doctrine "which operates independently of the literal wording of the Code of Civil Procedure" to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.  *Addison*, 21 Cal.3d at 318-19.  As with rules governing the applicable statute of limitations, federal courts in California apply California's rules for equitable tolling.  *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997).  "Under California's equitable tolling doctrine, the prior pursuit of a [legal] remedy may toll the [] statute of limitations when a person has 'several formal legal remedies and reasonably and in good

8

faith pursues one.'" *Donoghue v. Orange County*, 848 F.2d 926, 930 (9th Cir. 1987) (citing *Jones v. Tracy School Dist.,* 27 Cal.3d 99, 108 (1980)). "A plaintiff's pursuit of a remedy in another forum equitably tolls the limitations period if the plaintiff's actions satisfy these factors: 1) timely notice to the defendants in filing the first claim; 2) lack of prejudice to the defendants in gathering evidence for the second claim; and 3) good faith and reasonable conduct in filing the second claim." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275-76 (9th Cir. 1993) (applying California's rules for equitable tolling).

Plaintiffs argue they have satisfied the above factors, but from the face of Plaintiffs' allegations, it is clear they have not exercised "good faith and reasonable conduct" in pursuit of the claims presently before the Court. *See id.* After Judge James dismissed Plaintiffs' first federal complaint for failure to exhaust administrative remedies, Plaintiffs waited over a year and a half before initiating the process to exhaust those remedies. *See* FAC ¶ 10. Once Plaintiffs' administrative remedies were exhausted on May 11, 2009 pursuant to a settlement agreement between the Parties, Plaintiffs waited another two years before filing the claim on September 30, 2011 in Napa Superior Court. FAC ¶¶ 10, 30. This delay does not constitute the "good faith and reasonable conduct" required for application of the equitable tolling doctrine. *Ervin v. Los Angeles County*, 848 F.2d 1018, 1020 (9th Cir. 1988) (year and a half wait to file second complaint was unreasonable and not in good faith); *Estate of Blue*, 120 F.3d at 985 (plaintiff's decision to abandon the federal action and thus run the statute of limitations in order to pursue separate claims in state court did not amount to 'good faith and reasonable conduct'); *Peterson-Houston v. Finet/RPM Mortg. Corp.*, No. 96-3220, 1997 WL 446230 (N.D. Cal. July 23, 1997) (the court did not toll the claims where the plaintiff waited more than sixteen months to file suit in federal court after filing a discrimination complaint with the EEOC). *Easley v. County of El Dorado*, No. 08-1432, 2010 WL 4569137 (E.D. Cal. Nov. 3, 2010) *aff'd in Easley v. County of El*

*Dorado Prob. Dept.*, No. 11-15608, 2012 WL 2870574 (9th Cir. July 13, 2012) (filing second complaint after substantial delay was not good faith and reasonable conduct).

Plaintiffs argue that the circumstances which delayed the filing of the instant complaint justify tolling the claims beyond the time in which they pursued other legal remedies.  "Federal courts have allowed equitable tolling only sparingly."  *Wilson v. U.S. Gov't*, 23 F.3d 559, 561 (1st Cir. 1994) (citing *Irwin v. Veterans Admin.,* 498 U.S. 89, 94 (1990)).  Courts are "much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin*, 498 U.S. at 96.

Here, Plaintiffs ask the Court to toll their claims on the basis of hardship.  Plaintiffs state that after the April 28, 2005 incident, S.B. suffered from "inconsolable fear and terror" and until S.B. stabilized, "it was virtually impossible to adequately allege a complete reiteration of the facts which comprise the allegations."  FAC ¶¶ 30, 32.  But as this Court stated in its previous order, S.B.'s injuries "did not prevent the filing of the first action, nor did they prevent the Plaintiff from pursuing her administrative remedies."  *Brown*, 2012 WL 1831539, at *7.

Moreover, the Court reiterates that "[t]his is not a case where . . . Plaintiff's own mental incapacity or illness prevented the timely filing of a claim."  *Id*.  Although the First Amended Complaint states that S.B.'s mother became "ill and fatigued" from the burdens of defending SARB proceedings, teaching S.B. through home school as well as caring for S.B. and her siblings, and moving out of the school district, Plaintiffs have not alleged facts which show they were incapacitated or unable to pursue appropriate legal remedies.  *See Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996) (even a plaintiff's "mental illness tolls a statute of limitations only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them").  Unless Plaintiffs can show that for circumstances beyond their control they were unable to pursue appropriate legal remedies in a timely manner, this Court

has no power to disregard the statute of limitations and toll the claims. *See Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152 (1984) *(per curiam)* ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants").

The Court is mindful that questions regarding equitable tolling are not usually easily resolved on a 12(b)(6) motion to dismiss since they often require looking to materials outside the pleadings. *Cervantes*, 5 F.3d at 1276. However, it is evident from Plaintiffs' First Amended Complaint that Plaintiffs cannot prevail, as a matter of law, on the equitable tolling issue. *Ervin*, 848 F.2d at 1020. The Court has tolled Plaintiffs' claims for 688 days, the period in which Plaintiff pursued her administrative remedies and the time in which Plaintiffs' first federal lawsuit was pending before Judge James. *Lantzy v. Centex Homes*, 31 Cal.4th 363, 370-71 (2003) ("the limitations period stops running during the tolling event, and begins to run again only when the tolling event has concluded"). But even accounting for this time, and even when applying the longest statute of limitations of three years for Plaintiffs' ADA claim, Plaintiffs filed the instant claim one and a half years late. Because Plaintiffs have alleged no facts to show "good faith and reasonable conduct" during the time in which her claims went stale, the Court cannot invoke application of the equitable tolling doctrine.

### C.     Continuing Violations Doctrine

Plaintiffs also allege that the continuing violations doctrine extends the accrual of the ADA and Rehabilitation Act claims. Although in *Douglas* the Ninth Circuit contemplated "two methods by which a plaintiff may establish a continuing violation," *see Douglas*, 271 F.3d 812, 822 (9th Cir. 2001), the Supreme Court expressly rejected the continuing violations theory arising out of "serial violations." *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *see also Cherosky v. Henderson*, 330 F.3d 1243, 1246 (9th Cir. 2003) ("In *Morgan* . . . the

Supreme Court substantially limited the notion of continuing violations"). Therefore, if Plaintiffs are to prevail on a continuing violations theory, they must have alleged facts which show there was a "systematic policy or practice of discrimination that operated, in part, within the limitations period--a systemic violation." *Douglas*, 271 F.3d at 822.

Plaintiffs have alleged no systemic policy or practice of discrimination which could give rise to the continuing violations doctrine. Plaintiffs' complaint arises out of an incident which occurred on April 28, 2005, over six years ago. From this, Plaintiffs allege that Defendants advanced the following policies and procedures: 1) failing to appropriately redress the April 28th incident;[7] 2) "commencing SARB proceedings against S.B. and her family as a first strike attack"; and 3) "engaging in invasive and extraordinary tactics and means designed to intimidate and harass S.B. and her family." FAC ¶ 33. The Court addresses these allegations separately.

The April 28th incident alleged in the First Amended Complaint was a discrete event that occurred outside the limitations period. The Supreme Court in "*Morgan* [made] clear that claims based on discrete acts are only timely where such acts occurred within the limitations period[.]" *Cherosky*, 330 F.3d at 1247 (citing *Morgan*, 536 U.S. at 114). Plaintiffs' attempt to re-characterize the incident in terms of a "policy" of failing to appropriately respond to this incident does not merit application of the continuing violations doctrine.

While the commencement of SARB proceedings against families with handicap children to prevent them from advocating for their rights, as Plaintiffs allege, would undoubtedly constitute a discriminatory policy, the commencement of SARB proceedings against S.B. and her

---

[7] Plaintiffs' specific allegations relating to the April 28th incident are that Defendants: "(a) Permitt[ed] a teacher to remain in S.B.'s classroom that was openly adverse to working with special education students like S.B.; (b) Fail[ed] to take heed of complaints and concerns voiced by S.B.'s instructional assistant who was clear that S.B.'s teacher was unstable and posed a danger to S.B. and other students in her classroom; (c) Fail[ed] to document and report the restraints suffered by S.B. as required by law."

12

family is itself a discrete act. *See Cherosky*, 330 F.3d at 1247. In *Cherosky*, Ninth Circuit held that the "allegation that [] discrete acts were undertaken pursuant to a discriminatory policy does not extend the statutory limitations period[.]" *Id.* It is clear from the First Amended Complaint that the SARB proceedings against Plaintiffs occurred sometime before the family moved in August 2008, and therefore, they too are time-barred. *See id.*

While it may appear that *Cherosky* forecloses the continuing violations doctrine, the Ninth Circuit clarified that it is the *discriminatory policy* which must be challenged. *Id*. at 1246; *see also Morgan*, 536 U.S. at 114. Here, Plaintiffs have not alleged that Defendants maintain a widespread or routine discriminatory policy to bring SARB proceedings against families with handicap children. Reading the pleadings in the light most favorable to Plaintiffs, the allegations charge school districts in general with using SARB proceedings as a "first strike attack," not Defendants in particular.[8] In any event, Plaintiffs have alleged no policy of the NVUSD to silence families with handicap children and stop them from enforcing their rights.

Finally, the Court addresses Plaintiffs' allegation that during the limitations period, Defendants were "engaging in invasive and extraordinary tactics and means designed to intimidate and harass S.B. and her family." As Defendant point out, Plaintiffs have not alleged any fact or specific incident to substantiate this claim. A plaintiff in federal court is required to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547. Plaintiffs' conclusory allegation that Defendants engaged in "invasive and extraordinary tactics" during this time period does not pass this threshold.

---

[8] In a footnote in the First Amended Complaint, Plaintiff states: "SARB Proceedings are often commenced by school districts as a 'first strike' method with the intention of putting parents on the defensive rather than giving them the first opportunity to file due process proceedings which seek to question and invalidate the student's programming and services." FAC ¶ 29 n.1.

13

In sum, although Plaintiffs attempt to frame their claim in terms of Defendants' "general practices or policies," it is clear Plaintiffs' sole reason for doing so is to subvert the statute of limitations. "A systemic violation claim requires no identifiable act of discrimination in the limitations period, and refers to general practices or policies." *Douglas*, 271 F.3d at 822. Plaintiffs have alleged no such widespread practice or policy. Thus, even assuming as true the facts alleged in the First Amended Complaint, Plaintiffs' continuing violations theory must fail.

### D.     Sufficiency of Plaintiffs' First Amended Complaint

In addition to the statute of limitations, the Court's previous order addressed the sufficiency of the allegations in Plaintiffs' previous complaint and held that many of Plaintiffs' claims must be dismissed for failure to state a claim. The Court dismissed the claims with leave to amend, but as mentioned above, Plaintiffs have not changed the substance of the complaint aside from a few facts purportedly showing the basis for equitable tolling and the continuing violations doctrine. Thus, even if the First Amended Complaint were not untimely, many claims must be dismissed for failure to state a claim. The Court's previous order provides an explanation for the following conclusions, but for the purpose of clarity, the Court's rulings are reiterated here:

> Plaintiffs' Rehabilitation Act and ADA claims, while time-barred, adequately placed Defendants NVUSD and Board on notice of the ADA and Rehabilitation Act claims against them.
>
> Plaintiffs' § 1983 claim fails to state a claim against any Defendant other than Defendant Hansen.
>
> To the extent Plaintiffs' § 1983 claim is asserted against Defendant Hansen in her individual capacity, it is dismissed. *See Vinson v. Thomas*, 288 F.3d 1145, 1155 (9th Cir. 2002).
>
> Plaintiffs have failed to state a claim of negligence as to Defendant Nemko.
>
> Plaintiffs have failed to state a claim of intentional inflection of emotional distress against any Defendant other than Defendant Hansen.

*Brown*, 2012 WL 1831539, at *10-13.

### E. Attorneys' Fees and Costs

The NVUSD and District Defendants have requested the Court to grant attorneys' fees and costs under California Code of Civil Procedure § 1038, which provides that a court shall award reasonable and necessary defense costs "[i]f the court should determine that the proceeding was not brought in good faith and with reasonable cause[.]" Cal. Civ. Proc. Code § 1038(a). "The plain purpose of section 1038 is to discourage frivolous lawsuits against public entities by providing public entities with an alternative remedy to a constitutionally proscribed action for malicious prosecution." *Gamble v. Los Angeles Dept. of Water & Power*, 97 Cal.App.4th 253, 258-59 (2002) (citing *Kobzoff v. Los Angeles County Harbor/UCLA Medical Center*, 19 Cal.4th 851, 857 (1998)). To deny a motion for fees under section 1038, the court must find that the plaintiff brought or maintained the action *both* in subjective good faith *and* with objective reasonable cause. *Laabs v. City of Victorville*, 163 Cal.App.4th 1242, 1271 (2008) (citing *Kobzoff*, 19 Cal.4th at 862). Not every defendant who prevails on a motion to dismiss will prevail on a section 1038 motion. "[V]ictory does not per se indicate lack of reasonable cause. That victory is simply the first step." *Kobzoff*, 19 Cal.4th at 856.

The Court finds that Defendants are not entitled to attorneys' fees and costs pursuant to section 1038. Although the Court will grant Defendants' Motions, the Court cannot say that Plaintiffs filed their complaints without good faith or reasonable cause. There is no indication Plaintiffs undertook any actions that were not in good faith. *See Knight v. City of Capitola*, 4 Cal.App.4th Cal.App.4th 918, 932 (1992), *disapproved of on other grounds by Reid v. Google, Inc.*, 50 Cal.4th 512 (2010) ("*Good faith*, or its absence, involves a factual inquiry into the plaintiff's subjective state of mind"). Nor is there any indication Plaintiffs did not have reasonable cause. *Id*. ("*Reasonable cause* is to be determined objectively, as a matter of law, on the basis of the facts known to the plaintiff when he or she filed or maintained the action."); *see*

*also Kobzoff*, 19 Cal.4th at 857 (reasonable cause may be defined as "whether any reasonable attorney would have thought the claim tenable"). Plaintiffs presented their legal theories for equitable tolling and the continuing violations doctrines. Although the Court rejects Plaintiffs' theories, the Court cannot say Plaintiffs did not present them with reasonable cause. Moreover, Plaintiffs had reasonable cause to believe they had viable causes of action, as evidenced by this Court sustaining several claims in the previous order. The only named Defendant who did not have a viable claim alleged against him was Defendant Nemko, but Defendants have made no showing that Defendant Nemko incurred separate or additional legal costs. Accordingly, the Court denies Defendants' request for attorneys' fees and costs pursuant to section 1038.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the First Amended Complaint is GRANTED. Plaintiffs' claims are DISMISSED WITH PREJUDICE. The Clerk is directed to close the file.

IT IS SO ORDERED.

Dated: September 24, 2012

_____
Joseph C. Spero
United States Magistrate Judge